**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **HIGHER POWER HYDRAULIC DOORS, LLC**<br>    Plaintiff | |
| **v** | Case No. ___5:25-cv-192___ |
| **FEHR'S METAL BUILDING<br>CONSTRUCTION, LP**<br>    Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Higher Power Hydraulic Doors, LLC ("Higher Power"), for its Complaint against

Defendant Fehr's Metal Building Construction, LP ("FMBC") for patent infringement under 37

U.S.C. § 271, alleges as follows:

### INTRODUCTION

1.      Higher Power owns the inventions described and claimed in United States Patent

Nos. 8,245,446; 8,539,716; 8,769,871; 9,015,996; 9,091,107; 9,404,301; 9,428,951; and

10,208,529. FMBC has used and continues to use Higher Power's patented technology in

products they make, use, import, sell, and offer to sell. Higher Power seeks damages for patent

infringement and an injunction preventing FMBC from making, using, selling, or offering to sell

products embodying the technology claimed by Higher Power's patents without Higher Power's

permission.

### PARTIES

2.      Higher Power is a limited liability company organized and existing under the laws

of the State of Michigan and has its principal office in Benton Harbor, Michigan.

3.      On information and belief, FMBC is a limited partnership organized and existing

under the laws of the State of Texas and has a principal place of business in Seminole, Texas.

1

## JURISDICTION AND VENUE

4.    This action for patent infringement arises under the laws of the United States, Title 35 of the United States Code, 35 U.S.C. § 1 et seq.

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

6.    This Court has personal jurisdiction over FMBC. FMBC is a Texas corporation and has its headquarters in Seminole, Texas.

7.    Upon information and belief, FMBC regularly transacts business within the Northern District of Texas, ("this District") and has sufficient contacts with customers located in this District.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 139l(d), and 1400(b).  FMBC is a Texas corporation, and, thus, a resident of Texas pursuant to 28 U.S.C. § 1400(b).

## HIGHER POWER'S PATENTS

9.    United States Patent No. 8,245,446 entitled "Tilt-up Door" ("the '446 Patent") was duly issued by the United States Patent and Trademark Office on August 21, 2012. A true and correct copy of the '446 Patent is attached as *Exhibit A*.

10.    The '446 Patent is assigned to and owned by Higher Power.

11.    United States Patent No. 8,539,716 entitled "Tilt-up Door" ("the '716 Patent") was duly issued by the United States Patent and Trademark Office on September 24, 2013. A true and correct copy of the '716 Patent is attached as *Exhibit B*.

12.    The '716 Patent is assigned to and owned by Higher Power.

13.    United States Patent No. 8,769,871 entitled "Tilt-up Door" ("the '871 Patent") was duly issued by the United States Patent and Trademark Office on July 8, 2014. A true and correct copy of the '871 Patent is attached as ***Exhibit C***.

14.    The '871 Patent is assigned to and owned by Higher Power.

15.    United States Patent No. 9,015,996 entitled "Tilt-up Door" ("the '996 Patent") was duly issued by the United States Patent and Trademark Office on April 28, 2015. A true and correct copy of the '996 Patent is attached as ***Exhibit D.***

16.    The '996 Patent is assigned to and owned by Higher Power.

17.    United States Patent No. 9,091,107 entitled "Tilt-up Door" ("the '107 Patent") was duly issued by the United States Patent and Trademark Office on July 28, 2015. A true and correct copy of the '107 Patent is attached as ***Exhibit E***.

18.    The '107 Patent is assigned to and owned by Higher Power.

19.    United States Patent No. 9,404,301 entitled "Tilt-up Door" ("the '301 Patent") was duly issued by the United States Patent and Trademark Office on August 2, 2016. A true and correct copy of the '301 Patent is attached as ***Exhibit F.***

20.    The '301 Patent is assigned to and owned by Higher Power.

21.    United States Patent No. 9,428,951 entitled "Tilt-up Door" ("the '951 Patent") was duly issued by the United States Patent and Trademark Office on August 30, 2016. A true and correct copy of the '951 Patent is attached as ***Exhibit G.***

22.    The '951 Patent is assigned to and owned by Higher Power.

23.    United States Patent No. 10,208,529 entitled "Tilt-up Door" ("the '529 Patent") was duly issued by the United States Patent and Trademark Office on February 19, 2019. A true and correct copy of the '529 Patent is attached as ***Exhibit H.***

24.    The '529 Patent is assigned to and owned by Higher Power.

25.    The '446 Patent, '716 Patent, '871 Patent, '996 Patent, '107 Patent, '301 Patent, '951 Patent, and '529 Patent are collectively referred to as the Higher Power Patents.

26.    FMBC has and continues to make, use, import, offer to sell and/or sell in the United States a tilt-up door product that infringes one or more claims of the Higher Power Patents, as illustrated by the photographs attached as *Exhibit I* ("the Accused Product").

27.    At least one instance of the Accused Product is installed at Odessa-Schlemeyer Field in Odessa, Texas.

28.    On information and belief, FMBC advertises and promotes the Accused Product within this District.

29.    On information and belief, FMBC also instructs and informs its customers of the Accused Product how to infringe Higher Power's patents by information provided along with the installation of the Accused Product within this District.

30.    Higher Power has sold and currently sells a tilt-up door product ("the Higher Power Product"), which practices the claimed invention of the Higher Power Patents, as illustrated by the brochure attached as *Exhibit J.*

31.    Both the Accused Product and the Higher Power Product are used as doors for large buildings such as airplane hangars, farm equipment storage buildings, marine storage buildings and heavy equipment storage buildings.

32.    Higher Power has at all relevant times provided marking notice of one or more of the Higher Power Patents on or in connection with the Higher Power Product pursuant to 35 U.S.C. § 287.

33.    FMBC was put on notice of its infringement of the Higher Power Patents by way of correspondence sent March 26, 2025. ***Exhibit K.***

34.    FMBC made no response to the March 26 letter.

## COUNT I

## Direct Infringement Under 35 U.S.C. §271(a) of the '446 Patent

35.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

36.    FMBC's Accused Product includes all of the elements of at least one claim of the '446 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '446 Patent that will be asserted in the case) independent claim 1, as set forth below:

a)    The Accused Product is a tilt-up door for a building having a door opening to be closed by a door, the door having a vertical closed position and being movable in an opening cycle to a generally horizontal open position and being movable in a closing cycle from the open position to the closed position, the door having dimensions that are substantially equal to the door opening:

b)    The Accused Product having a door frame including at least top and bottom horizontal members, at least two vertical side members connected to the top and bottom horizontal members at opposite ends of the top and bottom horizontal members, each of the at least two vertical side members having a horizontally extending pivot shaft tube connected to the vertical side member and positioned between the top and bottom horizontal members, and first and second horizontal outwardly extending cam followers each connected to one of the at least two vertical side members adjacent to the top horizontal member;

5

c)    The Accused Product having first and second vertical channel members each having a web and spaced flanges forming a generally U-shaped channel, the first and second channel members being connected to the building and extending vertically along opposite sides of the door opening with the generally U-shaped channels facing each other and the door opening;

d)    The Accused Product having first and second generally horizontal track members each having first and second ends, each of the first and second track members being supported with the first end adjacent one of the vertical channel members and the top edge of the door opening, each horizontal track member having a curved cam surface extending from adjacent the first end toward the second end;

e)    The Accused Product having first and second carriages each including a horizontal pivot shaft journal and at least two wheels, each of the carriages being positioned in one of the U-shaped channels for vertical movement in the U-shaped channels;

f)    The Accused Product having first and second horizontally extending pivot shafts each rotatably connecting a pivot shaft tube to a pivot shaft journal with each of the first and second outwardly extending cam followers engaging one of the cam surfaces;

g)    The Accused Product having a horizontally extending truss on the outside of the door connected to the at least two vertical side members at a vertical position between the top and bottom members to be outside the door opening when the door is in the open position and located generally adjacent the pivot shaft tubes, and

h)    The Accused Product having at least one actuator connected to the first and second carriages operable to move the first and second carriages in the U-shaped channels;

i)    The Accused Product having a door mounted for vertical movement and for tilting movement about the horizontal axis of the pivot shafts in the door opening when the actuator is operated to move the first and second carriages vertically in the U-shaped channels and the first and second cam followers along the respective cam surfaces to tilt the door to a generally horizontal position as the door is moved vertically upward.

37.    To the extent that one or more of the elements of any asserted claim of the '446 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

38.    Therefore, FMBC has and continues to directly infringe one or more claims of the '446 Patent under 35 U.S.C. § 271(a).

39.    There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '446 Patent.

40.    The objectively high likelihood of infringing the '446 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

41.    Therefore, FMBC's direct infringement of the '446 Patent has been willful.

42.    To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT II

### Direct Infringement Under 35 U.S.C. §271(a) of the '716 Patent

43.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

44.    FMBC's Accused Product includes all of the elements of at least one claim of the '716 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '716 Patent that will be asserted in the case) independent claim 1, as set forth below (with references to *Exhibit I*):

a.    The Accused Product is a tilt-up door system for a building having an opening;

b.    The Accused Product having a door frame comprising a pair of vertically juxtaposed members defining a vertical track;

c.    The Accused Product having at least one first cam surface extending generally laterally from the vertical track at an upper portion thereof, wherein the at least one first cam surface has a first steep inclined segment, a second inclined segment and a third descending segment;

d.    The Accused Product having a door sized to span the opening and pivotally coupled with at least one roller disposed within the vertical track, and at least one cam follower extending laterally from an upper portion of the door in register with the at least one first cam surface;

8

e.     Where when the door of the Accused Product is placed in alignment with the opening in a closed, lowered position, the at least one roller is disposed within the vertical track and the at least one cam follower is located adjacent to the at least one first cam surface, and an upwardly-directed motive force acts upon the door, the at least one cam follower comes into abutment with the first steep inclined segment of the at least one first cam surface which moves the door generally vertically, then into abutment with the second inclined segment of the at least one first cam surface which rotates the upper portion of the door inwardly, and then into abutment with the third descending segment of the at least one first cam surface to bring the door into an opened, raised position.

45.     To the extent that one or more of the elements of any asserted claim of the '716 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

46.     Therefore, FMBC has and continues to directly infringe one or more claims of the '716 Patent under 35 U.S.C. § 271(a).

47.     There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '716 Patent.

48.     The objectively high likelihood of infringing the '716 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

49.     Therefore, FMBC's direct infringement of the '716 Patent has been willful.

50.    To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT III

### Direct Infringement Under 35 U.S.C. §271(a) of the '871 Patent

51.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

52.    FMBC's Accused Product includes all of the elements of at least one claim of the '871 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '107 Patent that will be asserted in the case) independent claim 1, as set forth below:

      a.    The Accused Product is a tilt-up door system for a building having an opening;

      b.    The Accused Product having first and second juxtaposed members having upper and lower portions extending substantially vertically along opposite sides of the opening;

      c.    The Accused Product having first and second curved cam surfaces connected at one end to and extending generally laterally from respective ones of the first and second juxtaposed members at the upper portion thereof and having a second end;

      d.    The Accused Product having a door sized to span the opening having a top, a bottom and at least two vertical side members, the at least two vertical side members each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door;

e.    The Accused Product having a door sized to span the opening having first and second cam followers connected to the door extending laterally from an upper portion of the door in register with respective ones of the first and second cam surfaces

f.    The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal, each of the carriages being arranged for vertical movement along respective ones of the first and second juxtaposed members

g.    The Accused Product having a pair of horizontally extending pivot shafts, each pivot shaft pivotally connecting a pivot shaft tube to a pivot shaft journal;

h.    The Accused Product having at least one actuator connected to the first and second carriages operable to move the first and second carriages along respective ones of the first and second juxtaposed members;

i.    Whereby when the door of the Accused Product is placed in alignment with the opening in a closed, lowered position, the first and second carriages are positioned for vertical movement along respective ones of the first and second juxtaposed members and the first and second cam followers are in register with respective ones of the first and second cam surfaces, when the at least one actuator is operated to move the first and second carriages vertically along respective ones of the first and second juxtaposed members the first and second cam followers move along respective ones of the first and second cam surfaces to tilt the door to a generally horizontal position as the door is moved vertically upward by the first and second carriages

53.    To the extent that one or more of the elements of any asserted claim of the '871 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused

11

Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

54. Therefore, FMBC has and continues to directly infringe one or more claims of the '871 Patent under 35 U.S.C. § 271(a).

55. There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '871 Patent.

56. The objectively high likelihood of infringing the '871 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

57. Therefore, FMBC's direct infringement of the '871 Patent has been willful.

58. To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT IV

## Direct Infringement Under 35 U.S.C. §271(a) of the '996 Patent

59. Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

60. FMBC's Accused Product includes all of the elements of at least one claim of the '996 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '996 Patent that will be asserted in the case) independent claim 1, as set forth below:

a)      The Accused Product is a tilt-up door system for a building having an opening;

b)      The Accused Product having first and second juxtaposed support members having upper and lower portions extending substantially vertically along opposite sides of the opening;

c)      The Accused Product having first and second curved cam surfaces connected at one end to and extending generally laterally from respective ones of the first and second juxtaposed support members at the upper portion thereof and having a second end;

d)      The Accused Product having a door having an inside and an outside sized to span the opening having a top, a bottom and at least two vertical side members, the at least two vertical side members each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door

e)      The Accused Product having a door having first and second cam followers connected to the door extending laterally from an upper portion of the door in register with respective ones of the first and second cam surfaces;

f)      The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal, each of the carriages being arranged for vertical movement along respective ones of the first and second juxtaposed support members;

g)      The Accused Product having a pair of horizontally extending pivot shafts, each pivot shaft pivotally connecting a pivot shaft tube to a pivot shaft journal;

h)      The Accused Product having an actuator comprising vertically extending first and second hydraulic cylinders each mounted adjacent one of first and second juxtaposed support members and connected to one of the first and second carriages operable to move the first and second carriages along respective ones of the first and second juxtaposed support members;

i)      Whereby when the door of the Accused Product is placed in alignment with the opening in a closed, lowered position, the first and second carriages are positioned for vertical movement along respective ones of the first and second juxtaposed support members and the first and second cam followers are in register with respective ones of the first and second cam surfaces, when the first and second hydraulic cylinders are operated to move the first and second carriages vertically along respective ones of the first and second juxtaposed support members the first and second cam followers move along respective ones of the first and second cam surfaces to tilt the door to a generally horizontal position as the door is moved vertically upward by the first and second carriages.

61.     To the extent that one or more of the elements of any asserted claim of the '996 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

62.     Therefore, FMBC has and continues to directly infringe one or more claims of the '996 Patent under 35 U.S.C. § 271(a).

63.    There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '996 Patent.

64.    The objectively high likelihood of infringing the '996 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

65.    Therefore, FMBC's direct infringement of the '996 Patent has been willful.

66.    To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT V

### Direct Infringement Under 35 U.S.C. §271(a) of the '107 Patent

67.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

68.    FMBC's Accused Product includes all of the elements of at least one claim of the '107 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '107 Patent that will be asserted in the case) independent claim 1, as set forth below:

a)    The Accused Product is a tilt-up door system for a building having an opening;

b)    The Accused Product having first and second juxtaposed members having upper and lower portions extending substantially vertically along opposite sides of the opening;

c) The Accused Product having a door having an inside and an outside sized to span the opening having a top, a bottom and at least two vertical side members, the at least two vertical side members each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door;

d) The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal, each of the carriages being arranged for vertical movement along respective ones of the first and second juxtaposed members;

e) The Accused Product having a pair of horizontally extending pivot shafts, each pivot shaft pivotally connecting a pivot shaft tube to a pivot shaft journal;

f) The Accused Product having an actuator comprising vertically extending first and second hydraulic cylinders each mounted adjacent one of first and second juxtaposed members and connected to one of the first and second carriages operable to move the first and second carriages along respective ones of the first and second juxtaposed members;

g) The first and second hydraulic cylinders of the Accused Product each having a supply port, a flow control valve connected to the supply port, and a solenoid check valve connected to the flow control valve and the hydraulic cylinder;

h) The Accused Product having a hydraulic pump, a motor for operating the hydraulic pump, and a hydraulic fluid tank;

i) The Accused Product having a hydraulic circuit connecting the hydraulic pump and the supply ports of the first and second hydraulic cylinders;

j)      When the hydraulic pump of the Accused Product is operated hydraulic fluid is pumped into the first and second hydraulic cylinders to move the first and second carriages vertically along respective ones of the first and second juxtaposed members.

69.     To the extent that one or more of the elements of any asserted claim of the '107 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

70.     Therefore, FMBC has and continues to directly infringe one or more claims of the '107 Patent under 35 U.S.C. § 271(a).

71.     There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '107 Patent.

72.     The objectively high likelihood of infringing the '107 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

73.     Therefore, FMBC's direct infringement of the '107 Patent has been willful.

74.     To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT VI

### Direct Infringement Under 35 U.S.C. §271(a) of the '301 Patent

75.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

76.    FMBC's Accused Product includes all of the elements of at least one claim of the '301 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '301 Patent that will be asserted in the case) independent claim 1, as set forth below:

a)    The Accused Product is a tilt-up door system for a building having an opening;

b)    The Accused Product having first and second juxtaposed channel members each having a web and first and second spaced flanges forming a generally U-shaped channel having upper and lower portions extending substantially vertically along opposite sides of the opening;

c)    The Accused Product having a door having an inside and an outside sized to span the opening having a top, a bottom and at least two vertical side members, the at least two vertical side members each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door;

d)    The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal and at least two wheels, each of the carriages being arranged for vertical movement along the generally U-shaped channel of respective ones of the first and second juxtaposed channel members;

e)      The Accused Product having a pair of horizontally extending pivot shafts, each said pivot shaft pivotally connecting one of the pivot shaft tubes to one of the pivot shaft journals;

f)      The Accused Product having at least one actuator connected to the first and second carriages operable to move the first and second carriages along respective ones of the first and second juxtaposed channel members.

77.      To the extent that one or more of the elements of any asserted claim of the '301 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

78.      Therefore, FMBC has and continues to directly infringe one or more claims of the '301 Patent under 35 U.S.C. § 271(a).

79.      There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '301 Patent.

80.      The objectively high likelihood of infringing the '301 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

81.      Therefore, FMBC's direct infringement of the '301 Patent has been willful.

82.      To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform

substantially the same function in substantially the same way to achieve substantially the same result.

**COUNT VII**

**Direct Infringement Under 35 U.S.C. §271(a) of the '951 Patent**

83.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

84.    FMBC's Accused Product includes all of the elements of at least one claim of the '951 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '951 Patent that will be asserted in the case) independent claim 1, as set forth below:

    a)    The Accused Product is a tilt-up door system for a building having an opening;

    b)    The Accused Product having a door frame comprising first and second vertically juxtaposed members each defining a vertical track having an upper portion and a lower portion;

    c)    The Accused Product having a pair of first cams each extending generally laterally from respective ones of the juxtaposed members at the upper portion thereof, wherein the first cams each have a first steep inclined segment, a second inclined segment and a third generally horizontal segment;

    d)    The Accused Product having a door having an inside and an outside sized to span the opening having a top, a bottom and at least two vertical side members, the at least two vertical side members each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door, and a cam follower

extending laterally from an upper portion of each of the at least two vertical side members in register with respective ones of the first cams;

e)       The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal, each of the carriages being arranged for vertical movement along respective ones of the vertical tracks;

f)       The Accused Product having a pair of horizontally extending pivot shafts, each pivot shaft pivotally connecting a pivot shaft tube to a pivot shaft journal;

g)       The Accused Product having an actuator comprising vertically extending first and second hydraulic cylinders each mounted adjacent one of the first and second vertically juxtaposed members and connected to respective ones of the first and second carriages operable to move the first and second carriages along respective ones of the first and second juxtaposed members;

h)       The Accused Product having a hydraulic circuit including at least one hydraulic pump, a motor for operating the hydraulic pump, and a hydraulic fluid tank;

i)       Whereby when the at least one hydraulic pump of the Accused Product is operated hydraulic fluid is pumped into the first and second hydraulic cylinders to move the first and second carriages vertically along respective ones of the first and second juxtaposed members.

85.     To the extent that one or more of the elements of any asserted claim of the '951 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain

21

substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

86.    Therefore, FMBC has and continues to directly infringe one or more claims of the '951 Patent under 35 U.S.C. § 271(a).

87.    There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '951 Patent.

88.    The objectively high likelihood of infringing the '951 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

89.    Therefore, FMBC's direct infringement of the '951 Patent has been willful.

90.    To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result.

## COUNT VIII

### Direct Infringement Under 35 U.S.C. §271(a) of the '529 Patent

91.    Higher Power incorporates by reference each and every one of the preceding allegations as if set forth fully herein.

92.    FMBC's Accused Product includes all of the elements of at least one claim of the '529 Patent, including by way of example only (and not limiting with respect to the number or identity of claims of the '529 Patent that will be asserted in the case) independent claim 1, as set forth below:

a)    The Accused Product is a tilt-up door system for a building having an opening;

b)    The Accused Product having a door frame comprising first and second vertically juxtaposed members each defining a vertical track having an upper portion and a lower portion;

c)    The Accused Product having first and second generally horizontal members each having first and second ends, the first and second generally horizontal members extending generally laterally from respective ones of the first and second vertically juxtaposed members at the upper portion thereof with the first end adjacent the vertical track, each of the first and second generally horizontal members having a first cam surface extending from adjacent the first end toward the second end;

d)    The Accused Product having a door having an inside and an outside sized to span the opening having a top, a bottom and two vertical sides, the two vertical sides each having a horizontally extending pivot shaft tube positioned vertically between the top and bottom of the door, and first and second cam followers extending laterally from an upper portion of the door in register with respective ones of the first cams;

e)    The Accused Product having first and second carriages each including a horizontally extending pivot shaft journal positioned vertically between the top and bottom of the door, the first and second carriages being arranged for vertical movement along one of the vertical tracks;

f)    The Accused Product having first and second horizontally extending pivot shafts connecting respective ones of the pivot shaft tubes to the pivot shaft journals;

g)    The Accused Product having an actuator comprising first and second vertically extending hydraulic cylinders mounted adjacent respective ones of the first and second vertically juxtaposed members and connected to respective ones of the first and

second carriages operable to move the first and second carriages along respective ones of the first and second vertical tracks;

h)    The Accused Product having a hydraulic circuit including at least one hydraulic pump, a motor for operating the hydraulic pump and a hydraulic fluid tank;

i)    Whereby, when hydraulic fluid is pumped into the first and second hydraulic cylinders of the Accused Product the first and second carriages move vertically along the first and second vertical tracks.

93.    To the extent that one or more of the elements of any asserted claim of the '529 Patent is not literally present in the Accused Product, then such element is present in the Accused Products under the doctrine of equivalents because the corresponding feature in the Accused Product performs substantially the same function, in substantially the same way, to obtain substantially the same result as the claimed element and because there would be insubstantial differences between the claimed element and the corresponding feature in the Accused Product.

94.    Therefore, FMBC has and continues to directly infringe one or more claims of the '529 Patent under 35 U.S.C. § 271(a).

95.    There was and is an objectively high likelihood that FMBC's making, using, importing, selling and/or offering to sell the Accused Product in the United States constituted (and continues to constitute) infringement of the '529 Patent.

96.    The objectively high likelihood of infringing the '529 Patent was known by FMBC or was so obvious that it should have been known to FMBC.

97.    Therefore, FMBC's direct infringement of the '529 Patent has been willful.

98.    To the extent any claim element is not literally infringed, it is infringed under the doctrine of equivalents as the corresponding elements in the Accused Product perform

substantially the same function in substantially the same way to achieve substantially the same result.

## **REQUEST FOR RELIEF**

WHEREFORE, Higher Power asks this Court:

A.    For a judgment declaring that FMBC has infringed the '446 Patent;

B.    For a judgment declaring that FMBC has infringed the '716 Patent;

C.    For a judgment declaring that FMBC has infringed the '871 Patent;

D.    For a judgment declaring that FMBC has infringed the '996 Patent;

E.    For a judgment declaring that FMBC has infringed the '107 Patent;

F.    For a judgment declaring that FMBC has infringed the '301 Patent;

G.    For a judgment declaring that FMBC has infringed the '951 Patent;

H.    For a judgment declaring that FMBC has infringed the '529 Patent;

I.    For a judgment awarding Higher Power compensatory damages including a reasonable royalty and/or lost profits as a result of FMBC's infringement of the Higher Power Patents, together with interest and costs, and in no event less than a reasonable royalty;

J.    For a judgment declaring that FMBC's infringement of the Higher Power Patents has been willful and deliberate;

K.    For a judgment awarding Higher Power treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of FMBC's willful and deliberate infringement of the Higher Power Patents;

L.      For a judgment declaring that this case is exceptional and awarding Higher Power its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. § 284-285 and Rule 54(d) of the Federal Rules of Civil Procedure;

M.      For a grant of a preliminary and permanent injunction pursuant to 35 U.S.C. § 283, enjoining FMBC from further acts of infringement;

N.      For an order directing FMBC, its agents, servants, employees, partners, attorneys, successors, and assigns and all those acting in concert with it, to deliver to this Court or to Higher Power all infringing products for destruction, or show proof of said destruction;

O.      For an order award Higher Power post-judgment interest pursuant to 28 U.S.C. § 1961; and

P.      All other relief that this Court deems just and proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

26

Respectfully submitted,

Date:    September 15, 2025                By:                    */s/ Elizabeth Geary*
                                                        Elizabeth Geary[1]
                                                        Texas Bar No. 24083179
                                                        **KELLY HART & HALLMAN LLP**
                                                        500 W. Illinois, Suite 800
                                                        Midland, TX 79701
                                                        Tel: (432) 683-4691
                                                        Email: Elizabeth.geary@kellyhart.com

                                                        G. Thomas Williams
                                                        MI Bar No. P53734 (*Pro Hac Vice to be filed*)
                                                        **MCGARRY BAIR PC**
                                                        5355 Northland Dr. NE
                                                        Suite C - #226
                                                        Tel: (616) 742-3500
                                                        Email: gtw@mcgarrybair.com

                                                        *Counsel for Higher Power Hydraulic Doors, LLC*

---

[1] Resident of Lubbock County